IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| STEPHANIE STUCKY, | ) CIVIL NO. 06-00594 JMS/KSC |
| | ) |
| Plaintiff, | ) ORDER IMPOSING SANCTIONS |
| | ) |
| vs. | ) |
| | ) |
| STATE OF HAWAII, DEPARTMENT OF EDUCATION; PATRICIA HAMAMOTO, Superintendent; KEN NOMURA, Complex Area Superintendent; CATHERINE KILBORN, Principal, | ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## ORDER IMPOSING SANCTIONS

### I. INTRODUCTION

On January 25, 2008, the court entered an Order directing Plaintiff's attorney Andre Wooten ("Wooten") to show cause ("OSC") why monetary sanctions -- including but not limited to attorneys' fees -- should not be imposed against him based on his conduct during the summary judgment stage of this litigation. The court held a hearing on the OSC on February 19, 2008. Based on the following, the court sanctions Wooten $2,170 for Defendants' reasonable attorneys' fees, to be paid by May 21, 2008.

## II. **BACKGROUND**

A. **Summary Judgment Proceedings**

Plaintiff Stephanie Stucky ("Plaintiff") alleges in her Complaint that she was suspended and terminated from her employment with the State of Hawaii Department of Education in retaliation for filing discrimination complaints in violation of Title VII of the Civil Rights Act of 1964. In response to the Complaint, Defendants filed two Motions for Summary Judgment on October 3, 2007.

In October and November 2007, Wooten contacted Samuel Moore ("Moore"), one of Plaintiff's senior union representatives who represented her during her suspension and termination proceedings, regarding Plaintiff's opposition to the Motions for Summary Judgment. Wooten then drafted a declaration for Moore's signature based on his notes from these conversations. On November 15, 2007 -- the day Plaintiff's opposition was due -- Wooten emailed this draft declaration to Moore for his review and signature. Wooten, having failed to receive a response from Moore, then submitted the draft declaration to the court on November 15, 2007 as part of his opposition to the Motions for Summary Judgment ("Moore Declaration"). Moore's Declaration was not signed by hand, but contained a purported electronic signature, "/s/ Samuel Moore," in the space

for Moore's signature. At the time Wooten submitted this declaration to the court he was fully aware that Moore had not approved the content of the declaration. Wooten again emailed Moore on November 28, 2007, but did not receive a response.[1]

The court held a hearing on Defendants' Motions for Summary Judgment on December 3, 2007. At the December 3, 2007 hearing, Wooten argued that several statements in the Moore Declaration created genuine issues of material fact regarding Plaintiff's suspension and termination. Defendants also addressed the Moore Declaration at the hearing, and both parties relied on the Moore Declaration in their opposition and reply memoranda. Despite his submission of the Moore Declaration, and despite the importance that it clearly held to the Motions for Summary Judgment, Wooten failed to advise the court (or Defendants) that the Moore Declaration was neither approved nor signed by Moore. After the argument, the court took the Motions for Summary Judgment under advisement.

Wooten again emailed Moore on December 12, 2007, while the Motions for Summary Judgment remained under advisement, requesting Moore to

---

[1] Apparently, Moore was out of the office during this time for medical reasons and did not receive Wooten's emails.

sign the declaration that Wooten had submitted to him on November 15, 2007. On December 12, 2007, Moore responded to Wooten that he refused to sign the declaration, explaining that "it contains much that is simply my opinion." Pl.'s Ex. 3-A (Doc. No. 103). At this point, with the Motions for Summary Judgment under advisement and with certain knowledge that the court was unaware that the Moore Declaration was not approved or signed by Moore, Wooten failed to advise the court that Moore had not approved or signed the declaration, and in fact had specifically rejected it.

At a December 20, 2007 status conference jointly requested by the parties, the court was informed that during a December 19, 2007 deposition, Moore stated that he had never seen and did not sign the Moore Declaration. This was the first time that the court was informed that in fact Moore had neither approved nor signed the Moore Declaration.

After further discussion, the court struck the Moore Declaration and granted Plaintiff until December 21, 2007 to file a motion seeking leave to supplement the record. On December 27, 2007, Plaintiff filed a "Second Motion Allowing Filing of Samuel Moore Deposition in Lieu of Draft Declaration," (Doc. No. 97), with an attached "Declaration of Andre Wooten." Defendants filed a memorandum in opposition to the motion. The court held a status conference on

Plaintiff's motion on December 28, 2007, during which the court noted that at the December 3, 2007 hearing on Defendants' Motions for Summary Judgment, Wooten acted as if the Moore Declaration had, in fact, been authored and signed by Moore, and therefore Wooten deliberately misled the court.  Further, the court found that as of December 12, 2007, Wooten knew that Moore had rejected the declaration, but that for over a week, until December 20, 2007, Wooten did not inform the court.[2]

**B.     Order to Show Cause**

The January 25, 2008 OSC, citing Federal Rule of Civil Procedure 56(g)[3] and the court's inherent powers, ordered Wooten to show cause why he

---

[2] Although the court struck the original Moore Declaration, it allowed Plaintiff to file a declaration of Samuel Moore consistent with -- but no broader than -- Wooten's notes memorializing his conversations with Moore.  In ruling on Defendants' Motions for Summary Judgment, the court received and considered portions of the subsequent declaration signed by Moore and submitted by Plaintiff on January 8, 2008.  The January 8, 2008 Moore Declaration was not consistent in all material respects to the November 15, 2007 Moore Declaration.  Of particular significance, the November 15, 2007 Moore Declaration at paragraph 8 states that after Moore challenged the rule for the investigation, the Department of Education "huddled and said we have to withdraw the investigation report."  In his January 8, 2008 declaration at paragraph 4, Moore states that after the Department of Education huddled, they "withdrew the rule allegedly violated," not the entire investigation report.

[3] Federal Rule of Civil Procedure 56(g) states:

> If satisfied that an affidavit under this rule is submitted in bad faith or solely for delay, the court must order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result.  An offending party or attorney may also be held in contempt.

(continued...)

should not be sanctioned for his conduct. Wooten filed a response to the OSC on February 4, 2008, and Defendants filed a response on February 11, 2008. The court held a hearing on the OSC on February 19, 2008. At the hearing, the court orally ruled that sanctions would be imposed, but did not rule as to the form or amount of sanctions. Defendants submitted a statement of attorneys' fees on March 4, 2008 setting forth their fees expended from December 20, 2007.[4] Wooten filed a "Supplemental Response to Order to Show Cause" on March 24, 2008.

### III. ANALYSIS

**A.    Sanctions Are Warranted**

### *1.    The Court's Authority to Impose Sanctions*

Federal courts have the inherent power to sanction litigants to prevent abuse of the judicial process, including the power to impose attorneys' fees as monetary sanctions and to discipline attorneys who appear before it. *Chambers v.*

---

[3](...continued)
Because only a party may be ordered to pay expenses under Rule 56(g) -- and the court does not wish to sanction Plaintiff for the conduct of her attorney -- the court does not rely on Rule 56(g) to impose sanctions in this instance. Rather, the court imposes sanctions based on its inherent powers.

[4] At the February 19, 2008 OSC hearing, the court instructed Defendants to submit their attorneys' fees expended in response to the Moore Declaration from its date of filing on November 15, 2007. Instead, Defendants submitted their attorneys' fees from December 20, 2007, the date the parties informed the court that Moore had not signed or approved his purported declaration.

*NASCO, Inc.*, 501 U.S. 32, 43-46 (1991); *see also Leon v. IDX Sys. Corp.*, 464 F.3d 951, 961 (9th Cir. 2006) ("Under its 'inherent powers,' a district court may also award sanctions in the form of attorneys' fees against a party or counsel who acts in bad faith, vexatiously, wantonly, or for oppressive reasons." (citation and some quotation signals omitted)); *Aloe Vera of Am., Inc. v. United States*, 376 F.3d 960, 964-65 (9th Cir. 2004) ("All federal courts are vested with inherent powers enabling them to manage their cases and courtrooms effectively and to ensure obedience to their orders. . . . As a function of this power, courts can dismiss cases in their entirety, bar witnesses, award attorney's fees and assess fines." (citation and quotation signals omitted)). "Before awarding such sanctions, the court must make an express finding that the sanctioned party's behavior constituted or was tantamount to bad faith." *Leon*, 464 F.3d at 961 (citation and quotation signals omitted).

Regardless of whether sanctions are imposed under the Federal Rules or pursuant to the court's inherent power, the decision to impose sanctions lies within the sound discretion of the court. *See Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1109 (9th Cir. 2005) ("Because the decision to impose sanctions under its inherent authority is within the sound discretion of the district court, we will not

overturn its decision unless the court committed an error of law or the court's factual determinations were clearly erroneous.").

### 2.  *Sanctions Against Wooten Are Warranted*

Wooten's written response to the OSC asserts that because the Moore Declaration was signed electronically, it was a "nullity," since an unsigned declaration is not valid evidence. According to Wooten, his "tender of the draft declaration of the declaration of Mr. Moore is analogous to an offer of proof, that this is what Mr. Moore would say. The document itself is clearly not signed, and no attempt was made to write Mr. Moore's signature upon the document to defraud the court in that matter." Pl.'s Resp. 5. Wooten's attempt to explain his conduct in this manner misses the point.[5]

---

[5] Wooten again misses the mark in his Supplemental Response to Order to Show Cause filed March 24, 2008, in which he surmises:

> Apparently, there is now a clerks [sic] office policy of notifying the filer and parties of 3rd party declarations which do not bear an actual signature. If such policy were in effect while I filed Mr. Miller's [sic] unsigned "draft" declaration in November 2007, we would not be in the posture we are now in this case. I do not know if the policy was in effect in November 2007, or if it was created or re-enforced due to this issue.

Pl.'s Supplemental Resp. to OSC 2. This argument is entirely without merit. It is not because the Clerk's Office or the court failed to notify Wooten that he filed an unsigned declaration that the court now issues sanctions. Rather, it is because Wooten filed an unsigned, purportedly "draft" declaration *and* his inexcusable delay in notifying the court of the unsigned submission -- including Moore's rejection of the declaration -- until it was discovered by Defendants.

8

Although Wooten did not sign the Moore Declaration with Moore's handwritten signature, he affixed an electronic signature -- when he knew that the Moore Declaration was merely a "draft" -- without notifying the court at the time of filing on November 15, 2007, or at the December 3, 2007 hearing, that Moore had not actually seen or signed the declaration. Why Wooten would submit a "draft declaration" to the court with no indication that he considered it only a "draft" is far from clear. What is clear, however, is that Wooten treated the Moore Declaration as a valid declaration during oral arguments on December 3, 2007, without providing the court with any notice that it was, at best, a draft declaration. Wooten also failed to disclose the fact that on December 12, 2007, Moore rejected the declaration as submitted.[6] Further, but for Moore's December 19, 2007

---

[6] In *Arthur Children's Trust v. Godfrey*, 994 F.2d 1390 (9th Cir. 1993), the court declined to award Rule 11 sanctions against an attorney who had filed and relied upon an unsigned affidavit in response to a motion for summary judgment. The Ninth Circuit agreed with the district court that using a misleading affidavit in this manner is an "improper purpose" under Rule 11, and that, although the attorney faced serious distance and time constraints in obtaining a signed affidavit, he should have instead filed a motion for additional time to conduct discovery. *Arthur Children's Trust*, 994 F.2d at 1399. In *Arthur Children's Trust*, however, the attorney did attach his own affidavit which explained that the affiant had rejected the unsigned affidavit as inaccurate and that the references to it in the motion papers were inserted before he knew of the affiant's refusal. *Id.* In contrast, Wooten did not disclose that the Moore Declaration was unsigned -- until it was discovered by Defendants -- and did not take any steps to withdraw it or to alert the court not to rely upon it.

> Although a court will normally disregard an unsigned affidavit, when an attorney represents to the court that the unsigned affidavit will be followed by an identical signed original the court may rely upon it in reaching its
> (continued...)

deposition and the December 20, 2007 status conference, the court would not have known that the declaration was not valid.

Wooten allowed the court and Defendants to be misled as to the true status of the Moore Declaration. He relied on the Moore Declaration in his written filings and in his oral argument, and only when Defendants discovered that Moore had not approved the declaration did he come clean with the court. At minimum, Wooten knew by December 12, 2007 that Moore rejected the declaration, yet he failed to inform the court or Defendants until after Moore himself revealed the truth at his December 19, 2007 deposition. Such conduct constitutes bad faith. *See Plaintiffs' Baycol Steering Comm. v. Bayer Corp.*, 419 F.3d 794, 805-06 (8th Cir. 2005) (upholding district court's finding of bad faith where attorney submitted electronically signed declaration knowing that declarant had not signed and would not sign declaration as filed, and the attorney did not inform the court or opposing counsel, and did not take any action to withdraw the filing).

---

⁶(...continued)
  decision. The attorney should know that the court will probably rely on the representation he has made. Under these circumstances the attorney has an affirmative duty to notify the court either that the affidavit has not been signed or submit the signed affidavit, if any, with an indication as to how it differs from that filed but unsigned.

*In re Westin Capital Mkts., Inc.*, 184 B.R. 109, 125 (Bankr. D. Or. 1995). Wooten certainly could have notified the court of the situation, but chose not to do so.

To administer our system of justice in a fair and thoughtful manner, courts rely on the good faith and honesty of attorneys. When an attorney submits a declaration of a third person, even if the declaration contains an electronic signature, courts fairly assume that the declaration has been approved by the declarant. Wooten's conduct falls well below this standard. Most troubling is the simple fact that while the Motions for Summary Judgment were under advisement, Wooten learned that Moore rejected the declaration and refused to sign. Yet Wooten remained silent.[7]

## B.     Form of Sanction

In its discretion, the court orders that Wooten pay Defendants' attorneys' fees reasonably expended in response to the filing of the Moore Declaration. "When a district court sanctions an attorney or a party based on its inherent powers, '[a] primary aspect of [its] discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process.'" *Lasar*, 399 F.3d at 1118 (*quoting Chambers*, 501 U.S. at 44-45) (alterations in original). Such a sanction is appropriate because it is designed to compensate Defendants, *id.* at

---

[7] The court can only speculate as to what Wooten would have done had the court, relying on the Moore Declaration, denied the Motions for Summary Judgment prior to December 19, 2007 and had Moore never been deposed. Under the circumstances, the court is inclined to believe that Wooten would have acted in a manner consistent with his prior conduct -- he would have remained silent.

1111, and deter similar conduct in the future. *See Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) (stating that the "spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent").

Defendants' Statement of Attorneys' Fees indicates that they expended 10.85 billable hours from December 20, 2007 to January 16, 2008 in response to the Moore Declaration.[8] Defendants' counsel, Deputy Attorney General Nelson Nabeta, states in his declaration that a range of reasonable attorneys' fees for such services in the areas of civil litigation run from $125 to $200 per hour. The court finds that $200 per hour is a reasonable rate for Mr.

///

///

///

///

///

---

[8] The court finds that these were hours reasonably expended and not redundant or otherwise unnecessary. *See Gates v. Deukmejian*, 987 F.2d 1392, 1398-99 (9th Cir. 1992).

Nabeta.[9]  The court therefore orders Wooten to pay Defendants attorneys' fees of $2,170.[10]

## IV. **CONCLUSION**

Based on the foregoing, the court orders Wooten to pay Defendants for their reasonable attorneys' fees in the amount of $2,170 by May 21, 2008.  The court also refers this matter to the State of Hawaii Office of Disciplinary Counsel.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, May 6, 2008.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Stucky v. State of Hawaii et al.*, Civ. No. 06-00594 JMS/KSC, Order Imposing Sanctions

---

[9] In determining whether an hourly rate is reasonable, the court considers the experience, skill, and reputation of the attorney requesting fees. *See Webb v. Ada County*, 285 F.3d 829, 840 & n.6 (9th Cir. 2002).  The reasonable hourly rate should reflect the prevailing market rates in the community.  Based on the court's knowledge of the prevailing rates in the community and the parties' submissions in this case, this court finds the hourly rate of $200 for Mr. Nabeta to be manifestly reasonable.

[10] 10.85 hours x $200 per hour = $2,170